OPINION OF THE COURT
Gerald Lebovits, J.
This attorney fee motion stems from lengthy and contested litigation. On November 26, 2002, petitioner, Vicki Ross, appeared in a Housing Part (HP) proceeding brought by order to show cause against her landlord, respondent Congregation B’Nai Abraham Mordechai, and corespondent Department of Housing Preservation and Development (DHPD). Petitioner sought a court order directing the respondent Congregation to correct two class “C” violations, failure to provide heat and failure to provide hot water, in her apartment at 32 East 38 Street in New York County. The Honorable Jerald R. Klein, in a consent order dated December 3, 2002, directed respondent to correct the two class “C” violations issued for the heat-and-hot-water violations. Contending that respondent violated the consent order by failing to provide adequate hot water to her apartment, petitioner moved by order to show cause returnable December 10, 2002, to restore the matter to the calendar. Under a so-ordered stipulation of settlement dated January 2, 2003, the parties agreed to the following: that heat had been restored to the subject premises on December 10, 2002; that respondent will pay a fine of $250 to DHPD; that respondent will pay petitioner $750 for attorney fees incurred for the HP proceeding; that respondent will provide water within seven days of the stipulation; and that petitioner will receive a one-month rent abatement for February 2003. Respondent then brought an order to show cause returnable January 21, 2003, seeking an extension of time to provide hot water to petitioner’s apartment. In a written order dated January 30, 2003, Judge Klein denied respondent’s request as academic. He found that respondent’s request for an extension of time was premised on its desire to improve and upgrade the water system and thus was not required by the January 2003 stipulation.
Alleging that respondent violated Judge Klein’s December 2002 consent order and the January 2003 stipulation by failing to provide hot water, petitioner moved, by order to show cause *561 returnable June 20, 2003, for civil contempt, civil penalties, and attorney fees. Judge Klein held a hearing on the motion on July 24, August 18, September 11, and September 17, 2003, and he also inspected the premises. On October 31, 2003, Judge Klein, in a written opinion, held respondent in civil contempt for failing to comply with the December 2002 order and the January 2003 stipulation. (See Ross v Congregation B’Nai Abraham Mordechai, Hous Part, Civ Ct, NY County, Oct. 31, 2003, Klein, J., Index No. 6509/02.) Judge Klein ordered respondent to pay a $250 civil contempt fine to petitioner and a $1,000 civil penalty to DHPD. (Id. at 4.) He further determined that petitioner is entitled to her “fair and reasonable legal fees . . . for the presentation of this application.” (Id.)
Respondent then appealed to the Appellate Term, First Department, and corespondent DHPD cross-appealed. The Appellate Term affirmed on August 2, 2005. (See Ross v Congregation B’Nai Abraham Mordechai, 8 Misc 3d 136[A], 2005 NY Slip Op 51224[U] [App Term, 1st Dept 2005] [per curiam].) The court held that the evidence adduced at the hearing established with reasonable certainty that respondent violated the December 2002 order and the January 2003 stipulation and, as to DHPD’s cross appeal, that Judge Klein correctly set the monetary award for civil penalties. (See 2005 NY Slip Op 51224[U], *2.)
On August 29, 2005, petitioner moved for attorney fees under Judiciary Law § 773 for the contempt proceeding and the appeal, but not for the underlying HP proceeding. The court set a hearing date to determine the amount of attorney fees petitioner might recover.
The Fee Hearing
The fee hearing required five days of oral argument and testimony. The court fully credits the testimony of petitioner’s attorney, Bruce Wiener, Esq., a partner at Warshaw, Burstein, Cohen, Schlesinger & Kuh, LLP (the firm). He introduced several exhibits into evidence, including a fee agreement dated June 3, 2002. That agreement delineated the attorney fees that petitioner agreed to pay the firm in an owner’s use holdover proceeding that respondent brought against petitioner in April 2002. Petitioner and the firm agreed to carry that agreement over to this HP proceeding.
Respondent had commenced that holdover proceeding to recover the subject apartment for charitable or educational nonresidential purposes, or both. Under the terms of the June 2002 fee agreement, petitioner agreed to pay the firm a *562 discounted hourly rate in the owner’s use case because of her financial situation. In exchange for the reduced hourly rate, petitioner agreed to pay the greater of the hourly fees or a contingency fee of 25% of any money respondent might pay in the event of a buyout to settle the holdover. (See petitioner’s exhibit 4, at 1-2.) After a trial, the Honorable Peter M. Wendt dismissed the holdover petition and found that petitioner was the prevailing party. No buyout occurred, and petitioner and respondent settled petitioner’s claim for attorney fees in that holdover proceeding.
The fee agreement provides that petitioner pay one half of the firm’s normal hourly rate. The firm continued to bill petitioner at the half rate for this HP proceeding because it was convenient for the firm and petitioner, its client, to do so. When this attorney fee hearing began, Wiener’s hourly rate was $445, but petitioner agreed to pay him a $223 hourly discounted rate. Petitioner agreed to pay a similar discounted half rate to other partners, associates, or paralegals. For example, Glenn H. Spiegel’s and Benjamin Teig’s rates were $150 an hour, but under the agreement, petitioner agreed to pay a $75 discounted hourly rate. Similarly, Leonard S. Schindler’s regular rate was $102 an hour, but petitioner agreed to pay a $51 discounted hourly rate.
The fee agreement provides that
“Our normal hourly rates currently range from $100 (our lowest legal assistant rate) to $475 (our highest partner or of counsel rate) . . . [Wiener’s) normal hourly billing rate for this matter is $223.00 per hour ... it is understood and agreed that you will be billed at one-half pfe) the normal hourly billing rates, and, in consideration of these reduced rates, our firm may be entitled to a contingency fee . . . .” (Petitioner’s exhibit 4, at 1 [emphasis added].)
At the hearing, petitioner offered into evidence the firm’s general billing practices, which detail the firm’s hourly rates for partners, associates, and other attorneys within the firm. According to the firm’s current standard billing practices, partners bill clients up to $500 an hour. Petitioner also introduced lengthy and detailed billing statements totaling $89,659.37 for attorney fees and disbursements from May 2003 through February 2006 for work performed on the contempt motion, the appeal, and the fee application. (Petitioner’s exhibits 7, 10A, 10B, 11; petitioner’s posthearing mem of law, Mar. 9, 2006, exhibit A.) The bills total $89,659.37 if the attorneys’ time is assessed *563 at the full hourly rate. The bills total $46,511.12 if the attorneys’ time is assessed at the discounted one-half hourly rate. (See id.)
Steven W Smollens, Esq., testified for respondent as an expert witness. The court highly regards his expertise and knowledge in landlord and tenant matters, and the court credits the integrity of his testimony in its entirety, although the court disagrees with it in two respects.
Smollens testified that an attorney’s hourly rate in a landlord-tenant proceeding in the Civil Court’s Housing Part should never exceed $300 an hour — the precise amount per hour he billed respondent for his testimony — even though this court and other courts in the Housing Part have awarded fees considerably higher than that, and rightly so. Housing Part cases can be extraordinarily complicated. Housing Part judges regularly encounter high-stakes litigation — for money, for safe housing, for landlords the right to repossess what is lawfully their own, for tenants the very right to live in one’s home. Much Housing Part litigation can and does require representation by attorneys of great skill and vast experience who deservedly command and receive fees that well exceed a $300-an-hour fee. The right to hire counsel of one’s choice in the Housing Part is equal only to the right to have competent counsel. Creating a per se rule capping the recovery of fees to $300 an hour will discourage attorneys from appearing in the Housing Part, a court of considerable importance to litigants and our city.
Smollens also testified that no Housing Part case is so complicated that more than one attorney need represent a litigant. Thus, Smollens suggested, the court should not award fees for the firm’s use of associates. But the time for which the firm’s associates billed served to reduce petitioner’s bill and, ultimately, any attorney fee award this court might render against respondent. Given the logic that a client need have only one attorney in the Housing Part, respondent should have had only one attorney for this attorney fee hearing. But respondent, a religious corporation, was always represented by two and often three attorneys in the courtroom during this hearing, even though a corporation appearing in an HP proceeding need have no attorney at all. Unlike the rule in non-HP cases, a corporate respondent in an HP proceeding may be represented by corporate officers, directors, principal stockholders, or managing agents, and need not have an attorney. (CCA 110 [Z].) And limiting the number of attorneys who may appear in the Housing Part suggests that Housing Part proceed *564 ings are simple creatures of law, fact, and equity. Putting aside the routine nonpayment proceeding, Housing Part proceedings are anything but.
Of considerable note, Smollens did not challenge petitioner’s bills. He did not testify that the firm’s bills reflected vague or duplicative work. He did not testify that the firm billed for unnecessary or unsuccessful work.
This fee hearing raises a series of issues. Most of them require little discussion; they are based on well-settled law. Only one issue requires a fuller discussion: the weight, if any, that a court must give a fee agreement in determining reasonable attorney fees. If a fee agreement establishes a discounted rate, may the court award attorney fees at a higher hourly rate than the discounted hourly rate? To this question, the court answers in the affirmative. The court gives weight to a fee agreement, although not binding weight, and in this case awards a rate higher than what the parties agreed to because the higher rate is the reasonable one.
Petitioner argues that this court should assess reasonable attorney fees by considering the fee agreement and apply the lodestar analysis. (See petitioner’s posthearing mem of law, Mar. 9, 2006, at 19-20.) Petitioner argues that this court should therefore award attorney fees at Wiener’s $445 hourly rate, not his $223 discounted hourly rate. (Id. at 15, 19.) Likewise, petitioner argues that this court should award the regular hourly rates for the firm’s other partners, associates, or paralegals, instead of the discounted hourly half rate. Petitioner asserts that no windfall will occur if the court awards attorney fees based on the firm’s normal hourly rate. (Id. at 21-22.) Awarding attorney fees in excess of any incurred fees, petitioner argues, would not be punitive to respondent. (Id. at 17.) Petitioner repeatedly argues, moreover, that by not briefing the issue on appeal, respondent waived its right to challenge “the proper measure of legal fees to be awarded.” (Id. at 12.)
Before the testimonial aspect of the fee hearing began, respondent argued that this court should award only the attorney fees that petitioner’s firm billed. (See respondent’s mem of law, Sept. 22, 2005, at point II, headings B, C.) Any other measure of attorney fees, respondent contended, would amount to a windfall for petitioner and be punitive to respondent. (Id. at point II, heading C.) Once the hearing ended, respondent expanded its arguments. Respondent now also argues that this court should award no attorney fees at all. According to respon *565 dent, petitioner failed to submit contemporaneous time records to prove that the hours were expended reasonably. (Respondent’s mem of law, Mar. 9, 2006, at 11.) In the alternative, respondent argues that if this court awards any attorney fees, the court must reduce the number of hours by a minimum of 15% because petitioner failed to submit contemporaneous time records. (Id. at 12.) Respondent further argues that this court should reduce any attorney fee award by 35 hours because, it urges, petitioner’s bills illustrate 35 hours of vague and duplicative work. (Id. at 13.) Additionally, respondent asks the court to reduce further any attorney fee award by $5,268.60, the amount incurred by petitioner for unnecessary and unsuccessful motions. (Id. at 14.) Respondent finally asserts that if the court applies the lodestar analysis, it should apply a $111.50 discounted hourly rate. (Id. at 10, 15.)
Respondent did not waive its right to challenge the proper measure of determining reasonable attorney fees. The only question before the Appellate Term was whether to affirm, modify, or reverse the contempt finding against respondent and the award of civil penalties in DHPD’s favor. But the court disagrees with respondent in all other respects.
Fee Agreements and Discounted Rates
A three-way split exists in the federal circuits on the main issue before the court. The first approach comes from the United States Supreme Court and from the United States Courts of Appeals for the Second, Tenth, and Eleventh Circuits, which hold that a fee agreement is one factor among many that the court should consider in assessing attorney fees. The second comes from the Third and Seventh Circuits, which hold that the amount in a fee agreement caps any attorney fee award. The third comes from the Eighth Circuit, which gives no weight to a fee agreement. The Eighth Circuit holds that courts have the discretion to determine an attorney fee award under a reasonableness standard.
The federal decisions are not binding on a New York State court. They deal with fee agreements in cases involving federal statutory, nonconstitutional law, such as the Copyright Act or the Lanham Act, or, in the case of the United States Supreme Court, a contingency fee agreement under a federal civil rights statute. (See 15 USC § 1051; 17 USC § 505; 42 USC § 1988; Blanchard v Bergeron, 489 US 87 [1989].) But they guide state courts in deciding how much weight to give a fee agreement when awarding attorney fees.
*566 This court finds the Supreme Court’s and the Second, Tenth, and Eleventh Circuits’ approach most persuasive and holds that a fee agreement is one factor among many that the court will consider in assessing reasonable attorney fees. (See Blanchard, 489 US at 93; Crescent Publ. Group, Inc. v Playboy Enters., Inc., 246 F3d 142, 151 [2d Cir 2001]; Getty Petroleum Corp. v Bartco Petroleum Corp., 858 F2d 103, 114 [2d Cir 1988], cert denied 490 US 1006 [1989]; Cadle Co., II, Inc. v Chasteen, 1993 WL 96886, *1, 1993 US App LEXIS 7015, *2-3 [10th Cir, Mar. 29, 1993], cert denied 510 US 865 [1993]; Tire Kingdom, Inc. v Morgan Tire & Auto, Inc., 253 F3d 1332, 1337 [11th Cir 2001] [per curiam].) This court finds it appropriate in this case to award attorney fees at the higher hourly rate instead of a discounted hourly rate because the higher rate in this case is reasonable. This court uses the lodestar method to determine the reasonableness of attorney fees; the lodestar method takes into account counsel’s reasonable time multiplied by counsel’s reasonable hourly rate. (Queenie, Ltd. v Nygard Intl., 204 F Supp 2d 601, 607-608 [SD NY 2002].) To determine a reasonable hourly rate, the court considers “the nature of the services rendered, the complexity and novelty of the issues, the attorney’s professional reputation and experience, the level of skill involved in handling the case, the result obtained and the going rate in the community for services of this kind performed by attorneys of comparable skills.” (Solow v Wellner, 150 Misc 2d 642, 652 [Hous Part, Civ Ct, NY County 1991], mod on other grounds 86 NY2d 582 [1995].) Petitioner was the prevailing party at every phase of this litigation; she is entitled to attorney fees. After applying the lodestar analysis and giving weight to the fee agreement as discussed below, the court finds petitioner’s request for attorney fees and disbursements reasonable; the court awards petitioner $89,659.37 at the firm’s attorneys’ usual hourly billing rate. This award is neither a windfall for petitioner nor punitive to respondent.
The Second, Tenth, and Eleventh Circuits’ approach is the most persuasive. These circuits consider the lodestar analysis and any existing fee agreement. They also hold that a court may consider a fee agreement, but that the agreement alone is not dispositive in the court’s assessment of reasonable attorney fees. (Crescent, 246 F3d at 151; Cadle Co., 1993 WL 96886, *2, 1993 US App LEXIS 7015, *6-7; Tire Kingdom, 253 F3d at 1337.) The Second Circuit in Crescent noted that “[t]he actual billing arrangement certainly provides a strong indication of *567 what private parties believe is the ‘reasonable’ fee to be awarded.” (246 F3d at 151.) The Crescent court did not go so far as to enunciate a per se rule that the actual billing arrangement places a ceiling on the amount the prevailing party can recover. (Id.) The court found, rather, that “in no event should the fees awarded amount to a windfall for the prevailing party.” (Id.) This reasoning is consistent with its earlier decision from 1988 in Getty.
Before it decided Crescent in 2001, the Second Circuit noted in Getty that to award attorney fees based on a discounted rate would result in a windfall to the losing party. (858 F2d at 114.) The Getty court held that an award of attorney fees may be assessed at a rate greater than the rate in a fee agreement if the rate is reasonable. (Id.)
The Tenth Circuit’s rule accords with the Second Circuit’s rule. The Tenth Circuit in Cadle Co. held that a fee arrangement “does not reflect what is a ‘reasonable attorney fee’ if the attorney reduces the fee rate because of a client’s poor financial condition.” (1993 WL 96886, *2, 1993 US App LEXIS 7015, *6.) Instead, according to the Tenth Circuit, a fee arrangement’s market value is but one factor a court may consider in determining reasonableness. (See 1993 WL 96886, *2, 1993 US App LEXIS 7015, *6-7.) The Cadle Co. court noted that attorneys who reduce their hourly rates for poor clients should not be penalized. (See 1993 WL 96886, *2, 1993 US App LEXIS 7015, *7, citing Save Our Cumberland Mtns., Inc. v Hodel, 857 F2d 1516 [DC Cir 1988] [en banc].)
Similarly, the Eleventh Circuit in Tire Kingdom, in its consideration of attorney fees on the subject, gave some weight to a fee agreement and applied a higher rate than what the parties agreed to. (See 253 F3d at 1337.) Relying on Blanchard, the United States Supreme Court’s seminal case on the subject, the Tire Kingdom court held that a fee agreement should not place a strict limit on a fee award. (Id.) The Blanchard court had held that a contingent fee agreement should not act as a ceiling in an attorney fee award under 42 USC § 1988. (See 489 US at 96.) The Blanchard court noted that a fee agreement was a factor the court could consider in its determination of reasonable fees but that the agreement was not controlling by itself. (Id. at 92-93.) The Blanchard court further held that reasonable fee awards must take into account billing rates and the number of hours spent in advancing successful claims. (See id. at 96.)
Lower federal and state courts are aligned with the Supreme Court and the Second, Tenth, and Eleventh Circuits. The *568 District Court for the Southern District of New York in Tri-Star Pictures, Inc. v Unger has held that a fee agreement is strong indication of reasonableness in determining reasonable fees. (42 F Supp 2d 296, 305 [1999].) In Yahoo!, Inc. v Net Games, Inc., the District Court for the Northern District of California held that a fee agreement is relevant in determining reasonable fees but should not foreclose a trial judge’s ability to award reasonable fees. (329 F Supp 2d 1179, 1183 [2004].) A reasonable fee award, the court noted, does not necessarily equal what a client agrees to pay. (Id. at 1188.) The Yahoo! court noted that a judge
“is in a better position ... to determine whether the requested number of hours is objectively reasonable because the court has seen the nature of the factual and legal questions in the case, as well as the quality of the attorneys’ work . . . [T]he court is concerned with the overall result obtained, not the particular allocation of labor that a party’s attorneys may choose.” (Id.)
The District Court for the District of Kansas in Hofer v Unum Life Ins. Co. of Am. held that affidavits detailing usual rates of other attorneys in the practice area reflecting a higher rate was a better indication of reasonableness than a discounted fee agreement. (338 F Supp 2d 1252, 1256-1257 [2004].) The Hofer court found that these affidavits reflect a reasonable value of legal services. (Id. at 1256.) In PLCM Group, Inc. v Drexler, the Supreme Court of California held that the terms of a fee agreement contract may be considered but that they do not compel any particular award. (22 Cal 4th 1084, 1096, 997 P2d 511, 519 [2000].) The court went on to hold that a judge is “the best judge of the value of professional services rendered.” (22 Cal 4th at 1095, 997 P2d at 518.)
Milman v Cataldi (139 Misc 2d 1067 [Hous Part, Civ Ct, NY County 1988]), decided by the New York City Civil Court, is the most analogous case because it discusses a discounted fee agreement in the landlord-tenant arena. It held that a court may assess reasonable attorney fees at a rate greater than what the parties agree to if the higher rate is reasonable. (See id.) The Milman court observed that courts routinely award legal fees to pro bono attorneys, who charge their clients nothing. (See id. at 1070, citing Blum v Stenson, 465 US 886 [1984].) The court further held as a matter of public policy that it would be unfair to cap attorney fees at a discounted rate instead of awarding a higher hourly rate. (See id.) The court held it unwise on the one hand to cap fees for attorneys who have billed at a discounted *569 rate and on the other hand to award reasonable fees to pro bono attorneys. (See id. at 1070-1071.)
As explained above, the Supreme Court, the Second, Tenth, and Eleventh Circuits, and lower federal and state courts give some weight to a fee agreement. Other circuits, like the Third and Seventh Circuits, give controlling weight to a fee agreement. This court disagrees with the Third and Seventh Circuits’ approach. These circuits hold that if a fee agreement exists, an attorney fee award must be limited to the agreed-on amount in the fee agreement. (See Lieb v Topstone Indus., Inc., 788 F2d 151, 156 [3d Cir 1986]; Assessment Tech, of WI, LLC v WIRE-data, Inc., 361 F3d 434, 438-439 [7th Cir 2004].) Both these circuits have held that a fee agreement places a ceiling on any attorney fee award. Thus, a court in the Third and Seventh Circuits may award attorney fees lower, but not greater, than the amount agreed on in the fee agreement. (Lieb, 788 F2d at 155-156; Assessment Tech., 361 F3d at 439.) In Lieb, the Third Circuit found that “a sum greater than what the client [was] charged may not be assessed.” (788 F2d at 156.) The Seventh Circuit in Assessment Tech, similarly found that “[t]he best evidence of the value of the lawyer’s services is what the client agreed to pay . . . .” (361 F3d at 438.) The court considered the parties’ “agreed sum” and time sheets in awarding attorney fees. (Id. at 439.)
This court also disagrees with the approach of the Eighth Circuit, which holds that a court may not consider a fee agreement. (Pinkham v Camex, Inc., 84 F3d 292, 294 [8th Cir 1996] [per curiam].) This circuit gives no weight to a fee agreement. (Id.) Instead, this circuit applies the lodestar analysis and allows the court to use its discretion in fashioning an attorney fee award. (Id.)
This court finds the Supreme Court’s, the Second, Tenth, and Eleventh Circuits’ and the lower federal and state courts’ approach persuasive. It is all-encompassing and balanced. It considers a number of significant factors relevant to the court’s determination of reasonable attorney fees. It allows the court to adjust attorney fees according to the objective lodestar method and the subjective fee agreement. It gives the court the discretion to determine what is reasonable. No single factor is dispositive in this approach. This approach will create neither a windfall nor be punitive to any party. It is the better approach because it enables a court to set fees reasonable to the complexity of the case and commensurate with the skill, experience, and *570 reputation of counsel. Creating a per se rule capping the recovery of attorney fees to the amount agreed in a fee agreement, as the Third and Seventh Circuits have done, will discourage attorneys from offering clients discounts. Not taking a fee agreement into account, as the Eighth Circuit has done, renders irrelevant market forces in determining reasonable rates. Without the blueprint of a fee agreement, moreover, the court’s determination of reasonableness is more onerous and less accurate.
Applying the lodestar method, this court finds that petitioner’s attorney fees, assessed at the greater hourly rate rather than the discounted rate, are reasonable. Petitioner’s firm invested extensive labor in prosecuting the contempt motion, defending the appeal before the Appellate Term, and then bringing this fee motion. The firm spent much time in this litigation going as far back as May 2003, when it prepared the contempt motion. The firm also dealt with time-consuming and multifaceted questions in handling petitioner’s case. The court disagrees with respondent’s argument that landlord-tenant cases are simple. The letters, motions, affirmations, affidavits, appellate briefs, and trial memorandums of law prove that no issue in that proceeding was simple or easy to handle. The firm had the wherewithal to perform its legal services properly in every aspect of this case. And the firm’s attorneys prevailed at every phase of this litigation.
The firm has experienced attorneys who are reputable in the landlord-tenant community. Wiener’s customary fee at the time of the fee hearing was $445 an hour. This hourly rate is reasonable compared to other rates at mid-sized Manhattan law firms, like Warshaw, Burstein, Cohen, Schlesinger & Kuh, LLR that handle real estate litigation. Given the customary rates of other attorneys in this practice area, the $223 discounted rate in the agreement was below market value and is therefore unreasonable. This court awards the higher rate rather than the discounted rate because the higher rate is the reasonable rate. The higher rate is the firm’s normal rate. If the firm, in its fee agreement, had agreed to charge the firm’s normal hourly rate to petitioner, the court would now award no more than what the parties would have agreed to.
The fee award here is neither a windfall for petitioner nor punitive to respondent. Respondent argues that the fee agreement does not reflect a pro bono relationship between petitioner and her attorney. This court disagrees. The firm offered petitioner *571 the discounted fee because of her financial situation. The fee agreement also had a contingency provision in the event of a buyout in the holdover proceeding. (See petitioner’s exhibit 4, at 1-2.) But no buyout occurred. That portion of the fee agreement concerning the contingency is irrelevant in the court’s determination of the fee award. Awarding the discounted hourly rate would therefore be a windfall for respondent. Respondent is a contemnor. It failed to provide hot water even after it was issued a violation, and even after it twice agreed to provide hot water: once in a consent order, later in a so-ordered stipulation. And respondent is litigious. The contempt hearing lasted four days. Its appeal was fully briefed and argued. This attorney fee hearing lasted five days. A litigious contemnor should not benefit from a discounted fee that an attorney generously offers a tenant who has a meritorious case but who is unable to afford market fees.
This court rejects respondent’s arguments that the firm billed petitioner for unnecessary or frivolous motions or that the firm engaged in double billing. No evidence supports these arguments. The supposedly unnecessary or frivolous motions were neither unnecessary nor frivolous. The motions, such as petitioner’s (1) opposition to respondent’s motion for a stay of the contempt order, (2) cross motion to vacate the stay when respondent moved to extend it, (3) opposition to respondent’s motion to extend the stay, and (4) motion to strike respondent’s reply brief, were all necessary because they responded to respondent’s motions or requests. Respondent’s expert witness did not testify about these items at the fee hearing; Respondent also argues that petitioner failed to submit contemporaneous time records. Because of this alleged failure, respondent argues that it is entitled to a negative inference or an adverse inference, or both. The court disagrees. Wiener did not offer into evidence his firm’s original handwritten time sheets, but he put into evidence his firm’s contemporaneous, computer-generated time records. His firm’s detailed documents reflect that the work charged for was done. Wiener also testified honestly that he supervised the other attorneys in the firm. The lack of original time sheets does not negate that.
In its posthearing memorandum of law, respondent argues that this court should assess Wiener’s fees at $111.50 an hour. Respondent argues that a portion of Wiener’s testimony is hearsay — the testimony about the firm’s motive to offer petitioner a discounted rate. Respondent contends that peti *572 tioner herself was the only one who could have testified about this issue. Respondent further argues that it is entitled to a negative inference. The court disagrees with these arguments. First, respondent chose not to call Ross as its own witness at the fee hearing; nothing prevented respondent from calling her. Wiener’s testimony on the question was not hearsay; he testified from personal knowledge. Second, respondent misinterprets the fee agreement’s plain language. The agreement requires petitioner to pay a $223 hourly discounted fee: “[Wiener’s] normal hourly billing rate for this matter is $223.00 per hour.” (Petitioner’s exhibit 4, at 1.) The agreement does not provide that the $223 rate be cut in half, as respondent suggests.
The amount of attorney fees involved in this litigation is $89,659.37. The court awards the entire amount. This is a substantial sum compared to the results the firm obtained in Judge Klein’s October 2003 order: a $250 contempt fine and a $1,000 civil penalty. But respondent failed to comply with the December 2002 consent order and the January 2003 stipulation. Respondent lost the contempt hearing after four days of testimony. Respondent appealed and lost. Respondent did not prevail at this five-day attorney fee hearing.
Attorney Fees for Work Performed after the Contempt Order
This court awards attorney fees incurred as a result of pursuing the contempt motion, the appeal, and the attorney fee application. The Fourth Department expresses the rule with precision: reasonable attorney fees and disbursements are recoverable if incurred by a party defending an appeal from a contempt order. (Data-Track Account Servs., Inc. v Lee, 15 AD3d 962, 963 [4th Dept 2005] [mem].) In Data-Track, the Fourth Department found that the attorney fees incurred were a “direct product of the contempt proceeding.” (Id.) Respondent appealed Judge Klein’s October 2003 order before the Appellate Term, and petitioner defended that appeal. Petitioner incurred attorney fees for work performed on the appeal and should be compensated.
This court disagrees with respondent’s argument that it limit attorney fees solely to the contempt motion. (See respondent’s mem of law, Sept. 22, 2005, at point II, heading A.) Respondent relies on Jamie v Jamie (19 AD3d 330 [1st Dept 2005] [mem]) for the proposition that attorney fees should be assessed only to the date of a contempt order and not beyond it. (See respondent’s mem of law, Sept. 22, 2005, at point II, heading A.) The First Department in Jamie quoted the Supreme *573 Court’s order, which provided that “ ‘plaintiffs shall be entitled to the attorney’s fees, along with the costs and disbursements, which they have incurred in prosecuting this contempt motion.’ ” (19 AD3d at 331.) The First Department found that the Supreme Court’s use of the past tense limited recovery to the date of the order in that case. (Id.) Respondent suggests that the following language from Judge Klein’s order, “plaintiffs shall be entitled to her fair and reasonable legal fees. Petitioner shall forward to respondent, within 60 days, a statement as to all fees incurred for the presentation of this application” (Ross v Congregation B’Nai Abraham Mordechai, Hous Part, Civ Ct, NY County, Oct. 31, 2003, Klein, J., Index No. 6509/02, at 4 [emphasis added]), should be understood to mean prosecuting the contempt motion, not prosecuting the appeal.
This court construes Judge Klein’s words differently. His order did not contemplate the appeal that respondent would bring or the dispute respondent would have over the fees. Petitioner ought not be punished for Judge Klein’s lack of anticipation that respondent would vigorously contest his order and then lose continuously. This court disagrees with respondent’s hyper-technical reading of Judge Klein’s October 2003 order.
Even assuming that Judge Klein never intended for petitioner to get attorney fees for an appeal or a fee on a fee, the law changed since he rendered his order in 2003. Before Jamie was decided in 2005, the First Department had held that a prevailing party may recover reasonable costs and expenses for civil contempt only when it shows an actual loss or injury. Jamie changed the law. (See Jamie, 19 AD3d at 330 [“(W)e overrule our prior holdings that attorneys’ fees are not recoverable where actual damages are shown”].) Now a prevailing party may recover attorney fees even when actual damages are not shown. (Id. [finding under Judiciary Law § 773 that a “party is entitled to recover . . . the reasonable [legal] costs and expenses in proving . . . the attendant contempt”].) Judge Klein found no actual damages and awarded only $250 “since no claim for actual damages was presented.” (Ross v Congregation B’Nai Abraham Mordechai, Hous Part, Civ Ct, NY County, Oct. 31, 2003, Klein, J., Index No. 6509/02, at 4.) Even under respondent’s crimped reading of Judge Klein’s order, Judge Klein followed the law as it existed in 2003.
“Fees on Fees” and Interest
The court’s attorney fee award includes petitioner’s attorney fees for this fee motion. A prevailing party may recover “fees on *574 fees.” (Rumble v Windsor Plaza Co., 161 AD2d 259, 260-261 [1st Dept 1990] [mem].) The prevailing party should be compensated for time spent proving the value of the attorney’s services. (Id. at 260.)
Petitioner is also entitled to interest. (See e.g. Goldman v Rosen, 10 Misc 3d 1065[A], 2005 NY Slip Op 52152[U], *6 [Hous Part, Civ Ct, NY County 2005].) The First Department in Ash & Miller v Freedman has awarded interest under CPLR 5001 (a) “as a matter of law” on judgment for unpaid attorney fees. (114 AD2d 823, 823 [1st Dept 1985] [mem], citing Delulio v 320-57 Corp., 99 AD2d 253 [1st Dept 1984].) An attorney fee award, according to the First Department, “ ‘represents] a conditional award or prerogative which does not mature until the underlying action or proceeding has been determined.’ ” (Solow Mgt. Corp. v Tanger, 19 AD3d 225, 226-227 [1st Dept 2005] [mem], quoting 119 Fifth Ave. Corp. v Berkhout, 135 Misc 2d 773, 774 [Hous Part, Civ Ct, NY County 1987].) The entitlement to interest accrues, therefore, from the date petitioner prevailed in the underlying proceeding. Judge Klein ruled in petitioner’s favor on October 31, 2003. (Ross v Congregation B’Nai Abraham Mordechai, Hous Part, Civ Ct, NY County, Oct. 31, 2003, Klein, J., Index No. 6509/02.) Thus, the potential for interest on the attorney fees began on October 31, 2003, when petitioner began to incur attorney fees in this proceeding.
CPLR 5001 (b) provides that “[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.” The intermediate date in the 889-day period between October 31, 2003, and today, April 7, 2006, is January 18, 2005, the 445th day.
This court awards attorney fees and disbursements in the sum of $89,659.37. To the sum of $89,659.37 is added nine percent legal interest for 445 days. To compute the interest for one year, the sum of $89,659.37 is multiplied by 0.09, for a total of $8,069.34. To calculate the interest for 445 days, $8,069.34 is multiplied by 445 and then divided by 365, the number of days in a year. The interest for 445 days is $9,837.96. Accordingly, to the sum of $89,659.37 in attorney fees is added $9,837.96 in interest, for a total money only final judgment in petitioner’s favor of $99,497.33.