OPINION OF THE COURT
Gerald Lebovits, J.
Respondent, Thomas Britt, an interior designer, is a rent-stabilized tenant at 15 East 63rd Street, a five-story residential townhouse located between Fifth and Madison avenues near Central Park in New York county. The subject apartment, featured in Architectural Digest magazine several times, is a 3,000-square-foot triplex apartment. Petitioners, Marianne Nestor, widow of the late fashion designer Oleg Cassini, and Peggy Nestor, her sister, bought the townhouse in 1984.
It did not take long for petitioners to make their first attempt to evict respondent. The parties have now accumulated a litigation history dating back some 20 years. (See e.g. Britt v Nestor, 17 AD3d 144 [1st Dept 2005, mem]; Nestor v Britt, NYLJ, July 2, 1998, at 32, col 1 [App Term, 1st Dept, per curiam], affd 270 AD2d 192 [1st Dept 2000, mem]; Matter of Nestor v New York State Div. of Hous. & Community Renewal, NYLJ, Jan. 15, 1998, at 28, col 6 [Sup Ct, NY County], amended NYLJ, Mar. 25, 1998, at 26, col 3 [Sup Ct, NY County], mod 257 AD2d 395 [1st Dept 1999, mem], lv dismissed and denied 93 NY2d 982 [1999]; Nestor v Britt, NYLJ, Apr. 18, 1994, at 27, col 3 [App Term, 1st Dept, per curiam], affd 213 AD2d 255 [1st Dept 1995, mem]; Nestor v Britft], NYLJ, Apr. 24, 1990, at 22, col 3 [App Term, 1st Dept, per curiam]; Nestor v Britt, NYLJ, Sept. 20, 1988, at 17, col 1 [App Term, 1st Dept, per curiam] [republished]; Nestor v Britt, Hous Part, Civ Ct, NY County, Aug. 8, 2006, Lansden, J., Index No. 68220/06; Nestor v Britt, Hous Part, Civ Ct, NY County, Jan. 12, 2006, Jackman-Brown, J., Index No. 100842/05.)
The current matter, an attorney fee motion, stems from two failed holdover proceedings in 2005 and 2006 — the third and fourth failed holdover proceedings petitioners brought against respondent on the failed ground that they intended to use respondent’s apartment for their personal use. Respondent, the *370 prevailing party in the 2005 and 2006 proceedings, is entitled to attorney fees. (See Real Property Law § 234.) He seeks $96,734.94. The issue is whether that sum is reasonable.
A fee hearing, all digitally recorded, was held on January 22 and 26, 2007. The hearing consisted solely of testimony from one of respondent’s attorneys, Todd V Lamb, Esq., a junior partner at the Cozen O’Conner law firm. The court credits his testimony fully. Lamb testified that he was respondent’s primary attorney for the 2005 and 2006 holdover proceedings. Menachem J. Kastner, Esq., a senior partner at Cozen O’Conner, assisted him in both proceedings. Kastner did not appear at the fee hearing; Lamb testified about Kastner’s experience and introduced into evidence billing statements detailing their work in the two holdover proceedings up to the day before the fee hearing. The fees sought include his and Kastner’s work in the two holdover proceedings, including expenses, appellate work, and the attorney fees they billed to get attorney fees.
Petitioners do not dispute that, as the prevailing party, respondent is entitled to an attorney fee award. They argue that the amount sought is grossly excessive given what they call the straightforward nature of the two holdover proceedings and the fee hearing. They also contend that some of Lamb’s work was unrelated to the 2005 and 2006 proceedings, that many of Kastner’s time entries duplicate Lamb’s entries, and that the court should exclude any time entry related to appellate work and for respondent’s unsuccessful sanctions motion.
Using the lodestar method, which takes into account the issues in the proceedings, the attorneys’ skill and experience, the amount of time and labor involved, the results obtained, and the market rate for similar services, respondent’s attorney fees are, in the main, reasonable. The court will, however, reduce the award by excluding the time respondent’s attorneys spent on respondent’s letter of March 2, 2006, the surreply, unrelated actions, and the unsuccessful sanctions motion.
The 1988 and 1989 Owner’s Use Holdover Proceedings
In the 1988 holdover proceeding, petitioners claimed that they planned to combine respondent’s apartment with several other apartments in the townhouse. Petitioners allegedly planned to use the combined space for Peggy Nestor’s and her nonparty daughter Lee Nestor’s primary residence. The Appellate Term affirmed the Civil Court Housing Part’s finding that petitioners did not meet their burden to prove that they intended to combine the apartments and live there. (See Nestor *371 v Britt, NYLJ, Sept. 20, 1988, at 17, col 1 [republished].) Following that proceeding, petitioners offered respondent a new renewal lease.
In June 1989, immediately after that renewal lease expired, petitioners brought a second holdover proceeding against respondent. Petitioners again claimed that they intended to use respondent’s triplex apartment as their primary residence. During the proceeding, the Appellate Term issued an interlocutory order requiring Marianne Nestor and a nonparty witness to submit to an examination before trial, striking respondent’s jury demand, and denying respondent’s motion to dismiss on res judicata grounds. (See Nestor v Britt, NYLJ, Apr. 24, 1990, at 22, col 3.) Respondent ultimately prevailed in this holdover proceeding. (See Nestor v Britt, NYLJ, Apr. 18, 1994, at 27, col 3.) The Appellate Division affirmed the Appellate Term’s finding that petitioners brought in bad faith their claim that they needed the apartment for their primary residence. (See Nestor v Britt, 213 AD2d at 255.)
Following the second holdover proceeding, petitioners moved to recover attorney fees from the two holdover proceedings. The Appellate Term reduced respondent’s total attorney fee award but granted respondent interest on the money judgement. (Nestor v Britt, NYLJ, July 2, 1998, at 32, col 1.) The Appellate Division affirmed. (See Nestor v Britt, 270 AD2d at 192.)
In addition to the holdover proceedings, petitioners also commenced a failed luxury-deregulation proceeding against respondent to recover the apartment. (See Nestor v Britt, 257 AD2d at 395-396.)
The 2005 Holdover Proceeding
Months before respondent’s last renewal lease was to expire on December 31, 2002, petitioners sent respondent notices dated August 14, September 25, and September 26, 2002, informing him once again that they would not renew his rent-stabilized lease. Again petitioners sought to occupy the apartment as their primary residence. Petitioners did not commence another holdover proceeding once respondent’s lease expired. For the next three years, they took no steps to recover the apartment. Then, in 2005, petitioners served respondent with a 30-day notice, dated September 21, 2005, to terminate his tenancy on November 8, 2005. In November 2005, petitioners commenced another holdover proceeding, the third holdover proceeding, to recover the apartment for their personal use.
Petitioners and respondent appeared in court on December 6, 2005. Respondent argued that all the notices that petitioners *372 served him were insufficient, vague, and ambiguous and that petitioners served the notices improperly. Petitioners argued that the notices were clear and did not prejudice respondent. In an order dated January 12, 2006, the Honorable Pam JackmanBrown dismissed the proceeding without prejudice. (See Nestor v Britt, Hous Part, Civ Ct, NY County, Jan. 12, 2006, JackmanBrown, J., Index No. 100842/05.) Judge Jackman-Brown found the 30-day predicate notice improper and that petitioners served respondent improperly. (See id., slip op at 1-2.)
The 2006 Holdover Proceeding
After the 2005 proceeding was dismissed, respondent mailed petitioners a letter demanding a new rent-stabilized renewal lease. Petitioners never sent respondent a new renewal lease. Instead, petitioners served respondent with a 30-day notice of termination of tenancy at sufferance, dated February 27, 2006. Petitioners informed respondent that his tenancy at sufferance was terminated because four years elapsed since the 2002 non-renewal notices.
In a letter to petitioners dated March 2, 2006, respondent warned petitioners not to rely on the 2002 notices to begin another holdover proceeding. The letter set forth case law arguing that Judge Jackman-Brown’s dismissal of the 2005 holdover proceeding vitiated the 2002 notices. Respondent informed petitioners that they must first offer him a new renewal lease before they could serve a new nonrenewal notice and commence another holdover proceeding against him.
Petitioners argued that they did not need to serve a new non-renewal notice. According to petitioners, Judge Jackman-Brown dismissed the first holdover proceeding without prejudice. Petitioners contended Judge Jackman-Brown never addressed on the merits the validity of the 2002 nonrenewal notices and that the three notices were presumptively valid. In April 2006, petitioners began the fourth holdover proceeding against respondent.
On May 9, 2006, petitioners and respondent appeared before the Honorable Marc Finkelstein. Respondent moved to dismiss. He argued that Judge Jackman-Brown’s dismissal of the first holdover proceeding vitiated the three 2002 nonrenewal notices. Respondent also counterclaimed and asserted the affirmative defense of breach of warranty of habitability and partial eviction, alleging that his bathroom was unusable because petitioners never replaced a faulty shower. Relying on information he supposedly discovered through an interview with Oleg Cassini *373 in Women’s Wear Daily magazine, respondent argued that petitioners intended to use the apartment for a Cassini museum, not for their own personal use. Respondent sought sanctions, arguing that petitioners had begun another frivolous holdover proceeding.
Opposing the motion to dismiss, petitioners argued that the three 2002 notices were valid. They also cross-moved for use and occupancy and for interim use and occupancy retroactive to January 1, 2003, the day after respondent’s last renewal lease expired.
After respondent had raised new arguments in his reply brief, petitioners requested an adjournment to serve surreply papers. On June 20, 2006, Judge Finkelstein granted the adjournment for petitioners to submit their surreply. Petitioners submitted their surreply a week later. Believing that petitioners’ surreply contained new additional arguments, respondent’s attorneys spent the July 4th weekend preparing respondent’s surreply. On July 5, 2006, the parties appeared for oral argument before the Honorable John S. Lansden, who was covering for Judge Finkelstein that day. When respondent tried to submit his surreply papers, Judge Lansden rejected them because Judge Finkelstein’s June 2006 order permitted only petitioners, not respondent, to submit a surreply.
By decision and order dated August 2006, Judge Lansden granted respondent’s motion to dismiss and denied petitioners’ cross motion for use and occupancy. (See Nestor v Britt, Hous Part, Civ Ct, NY County, Aug. 8, 2006, Lansden, J., Index No. 68220/06.) In a nine-page decision, Judge Lansden found that Judge Jackman-Brown’s dismissal of the first holdover proceeding “without prejudice” gave petitioners leave to commence another holdover proceeding only after correcting any service-of-process deficiencies and that petitioners had to serve a new termination notice before they could begin another proceeding. (Id., slip op at 7.) Judge Lansden was “unwilling” to find petitioners’ conduct sanctionable “[a]t this point.” (See id., slip op at 8-9.)
Petitioners appealed Judge Lansden’s order to the Appellate Term, First Department. Respondent moved to dismiss the appeal. The Appellate Term granted respondent’s motion conditionally. (See Nestor v Britt, 2006 NY Slip Op 78193[U] [App Term, 1st Dept, Oct. 24, 2006].) Petitioners withdrew their appeal in December 2006.
Respondent moved to recover his attorneys’ fees from the 2005 and 2006 holdover proceedings. On October 10, 2006, *374 petitioners and respondent appeared for oral argument before the Honorable Kevin C. McClanahan. Finding that respondent was the prevailing party, Judge McClanahan granted respondent’s motion for attorney fees to the extent of ordering that a hearing be held. The parties then appeared before this court to determine how much petitioners owe respondent in attorney fees.
The Attorney Fee Hearing
At the fee hearing, Lamb testified that, since he became an attorney in 1995, he has practiced landlord-tenant litigation exclusively. He is a junior partner at the law firm of Cozen O’Conner. He has handled all aspects of litigation, preparing pleadings and motions and conducting trials and appeals. He has written on landlord-tenant practice for the West Real Property Service. He testified that the firm gave him primary responsibility for this case in 2005, just before the third holdover proceeding. At that time, his hourly rate was $345. On January 1, 2006, his rate rose to $365 an hour. Kastner’s hourly rate was $480 to $485 when the 2005 holdover proceeding began. As of January 1, 2006, his hourly rate rose to $520.
Lamb introduced into evidence detailed billing statements from November 2005 up to the afternoon of January 21, 2007, the day before the fee hearing. (See respondent’s exhibits A, B.) He testified that the billing statements did not include an additional 45 minutes spent in the late afternoon of January 21, 2007 preparing for the fee hearing and 75 minutes he spent in the court for the fee hearing.
Lamb also testified that as of the fee hearing, all the bathroom repairs have been completed, all the rent is paid in full, and petitioners have offered respondent a new renewal lease.
On cross-examination, Lamb conceded that one of his entries on July 3, 2006, for 2.7 hours for “[preparation of sur-reply in further opposition to use and occupancy motion,” was a duplicative entry and should be excluded. In addition, Lamb conceded that Kastner’s entry on December 14, 2006, for “Conference with KH; conference with BC; draft and revise stipulation of settlement; conference with KH re: revisions,” was for an unrelated matter and should also be excluded.
Taking into account the two exclusions, respondent requests attorney fees for $89,564.94 from November 2005 up to the day before the fee hearing. This includes the work done in the 2005 and 2006 holdover proceedings, all expenses, and the appeal. *375 Respondent also requests $7,170 for fees on fees. In total, respondent seeks $96,734.94 in attorney fees.
Conclusions of Law
This fee hearing raises one issue: whether respondent’s attorney fees are reasonable. Courts have the discretion to determine what constitutes reasonable attorney fees. (Laurie L. Lau, A Further Consideration of Attorney’s Fees in the Housing Court from One Judge’s Perspective, at 21 [unpublished monograph for NY St Bar Assn CLE, Jan. 2, 2007].) Using the lodestar method to determine the reasonableness of attorney fees, this court exercises its discretion by multiplying the time counsel spent to resolve the issues by counsel’s reasonable hourly rate. (Ross v Congregation B’Nai Abraham Mordechai, 12 Misc 3d 559, 566 [Hous Part, Civ Ct, NY County 2006].) The lodestar analysis is all encompassing and balanced, creating no windfall and administering no punishment.
In determining what is reasonable, no single factor is dispositive. The court considers
“the difficulty of the issues and the skill required to resolve them; the lawyers’ experience, ability and reputation; the time and labor required; the amount involved and benefit resulting to the client from the services; the customary fee charged for similar services; the contingency or certainty of compensation; the results obtained and the responsibility involved.” (Morgan & Finnegan v Howe Chem. Co., 210 AD2d 62, 63 [1st Dept 1994, mem].)
Under this analysis, the court finds that respondent’s attorney fees and expenses for the 2005 and 2006 holdover proceeding, the appeal, and the fee hearing are reasonable, given the time records introduced. (See Lau, supra at 23 [noting that attorney seeking attorney fees must offer time and billing records into evidence].) The court reduces the total award, however, for the March 2006 warning letter which research respondent’s attorneys later duplicated, for fees for the unnecessary surrepiy, for some duplicated fees, and for the unsuccessful sanctions motion.
Considering Lamb’s and Kastner’s skill and experience and the customary rate for similar services in Manhattan, Lamb’s hourly rate of $365 and Kastner’s hourly rate of $520 are reasonable. Lamb is a junior partner at Cozen O’Conner with 12 years’ experience in landlord-tenant litigation. Kastner is the senior partner of Cozen O’Conner’s landlord-tenant group with *376 30 years’ experience in landlord-tenant litigation. In New York county, attorneys of skill, experience, and good fortune regularly command and receive fees that exceed $300 an hour for work in the Civil Court, Housing Part. Senior partners at large, reputable law firms can receive even more.
Lamb’s and Kastner’s work was neither duplicative nor unnecessary. Duplicative work occurs when “a firm bills twice for work done once.” (Goldman v Rosen, 10 Misc 3d 1065[A], 2005 NY Slip Op 52152[U], *1 [Hous Part, Civ Ct, NY County, Dec. 22, 2005], mod on other grounds 15 Misc 3d 135[A], 2007 NY Slip Op 50743[U], *1 [App Term, 1st Dept 2007, per curiam].) Regarding the 2006 holdover proceeding, Lamb has a time entry on May 2, 2006 of 4.5 hours for “[preparation of Affirmation in Support of Motion to Dismiss,” and Kastner has 0.7 hours to “[r]eview Draft of Affirmation in Support of Motion to Dismiss.” Similarly, Lamb has entries on May 3 and 4, 2006 for 9.7 hours to prepare the affirmation, and Kastner has entries for 2.4 hours to review it. The billing records also show that, between May 31 and June 13, 2006, Lamb spent 26.3 hours to prepare the reply affirmation, while Kastner devoted 15.8 hours to review, revise, and finalize it.
These billing entries show that Kastner worked on the same matters on which Lamb also worked. This does not, as petitioners contend, render the work duplicative. As the senior partner, Kastner has the ultimate responsibility for all the firm’s landlord-tenant cases. He is permitted to review Lamb’s work. Kastner had to approve everything Lamb did in both holdover proceedings. At the fee hearing, Lamb testified that the responsibilities for the 2005 and 2006 holdover proceedings were divided as follows: Lamb developed the overall strategy and drafted all papers, including pleadings and motions; Kastner reviewed and commented on the papers; and both Lamb and Kastner finalized the papers and prepared them for service. Although numerous court appearances ensued in the 2005 and 2006 holdover proceedings and the fee hearing, Kastner joined Lamb in court only twice during the 2006 holdover proceeding. He did not appear for the 2005 holdover proceeding or the fee hearing. Lamb’s and Kastner’s work in both holdover proceedings and the fee hearing was not duplicative or unnecessary.
Because of the 20-year-long and contentious history between petitioners and respondent, involving renowned figures and a palatial triplex apartment off Central Park, much was at stake in these holdover proceedings. After a 20-year history in which *377 petitioners repeatedly attempted to remove him from the apartment, it is no surprise that respondent would use all legitimate means at his disposal to prevail. Respondent was entitled to use the services of both Kastner and Lamb to ensure that he would get a renewal lease.
The tenacity of petitioners to recover the apartment added to the time, labor, and complexity of the 2005 and 2006 holdover proceedings. To prepare for the 2006 holdover proceeding, Lamb went through 17 boxes of litigation documents relating to the earlier holdover proceedings between petitioners and respondent. The 2005 and 2006 holdover proceedings themselves involved numerous letters, motions, affirmations, replies, surreplies, and affidavits.
Respondent’s attorneys had reasons to be prudent in their research. The research required to defend petitioners’ third and fourth failed holdovers required diligence and skill because of several facts associated with the parties’ litigation. Petitioners have been found untruthful in their earlier efforts to evict respondent. (E.g. Nestor v Britt, NYLJ, Apr. 18, 1994, at 27, col 3 [noting Appellate Term’s September 1988 affirmance dismissing first owner-use holdover proceeding in which trial judge noted Peggy Nestor’s “utter lack of candor”].) Petitioners’ (prior) attorneys have been sanctioned for misleading the court in trying to evict respondent. (Matter of Nestor v New York State Div. of Hous. & Community Renewal, NYLJ, Mar. 25, 1998, at 26, col 5 [Sup Ct, NY County], mod 257 AD2d 395 [1st Dept 1999, mem], lv dismissed and denied 93 NY2d 982 [1999].) After years of Marianne Nestor’s denying under oath in eviction proceedings against respondent that she was married to Cassini, his obituaries stated in March 2006 that they had been married for 31 years, according to respondent. (See respondent’s posthearing letter mem of law at 4-5.) Petitioners have been found to argue one thing one day and the opposite the next — which led the First Department to apply the doctrine of judicial estoppel against them in a seminal case on attorney fees. (See Nestor v Britt, 270 AD2d at 192-193.) Respondent, 67 years old when petitioners served their three nonrenewal notices in 2002, was entitled as a senior not to be evicted “unless the owner offers to provide and, if requested, provides an equivalent or superior housing accommodation at the same or lower regulated rent in a closely proximate area” (Rent Stabilization Code [9 NYCRR] § 2524.4 [a] [2]), and respondent’s triplex astride Central Park would be hard to replace “at the same or lower regulated rent.” *378 (See Croman v Leighton, 12 Misc 3d 73, 74 [App Term, 1st Dept 2006, per curiam] [noting that landlord-owner’s “offer of alternative accommodations . . . becomes a condition to maintaining such a proceeding once the tenant establishes that he or she is a senior citizen”].)
Petitioners argue that much of respondent’s attorneys’ work was unrelated to the 2005 and 2006 owner’s use holdover proceedings. They ask the court to exclude respondent’s attorneys’ work devoted to the unfinished bathroom repairs, the planned Oleg Cassini museum, and a suit filed by singer and songwriter Neil Diamond against petitioners. All this work was related to these proceedings. The court has jurisdiction over repairs, and the unfinished bathroom repairs were a part of respondent’s counterclaim and affirmative defense of the warranty of habitability in the 2006 holdover proceeding. Any research devoted to the Cassini museum was a part of respondent’s effort to contradict petitioners’ claim that they intended to use the apartment for their primary residence. The suit between petitioners and Diamond, their next-door neighbor, involved an allegedly illegal addition petitioners were putting on the roof of the subject townhouse. Respondent believed that this addition was connected to the purported Cassini museum.
Petitioners contend that respondent should not have spent so much time defending a proceeding he claimed was so frivolous he moved for sanctions. That argument puts an unfair burden on respondent. It is like petitioners saying that their proceeding was meritorious when they brought it but frivolous after they lost it. In addition, whether Judge Jackman-Brown’s dismissal of the 2005 holdover proceeding based on the invalidity of the 2005 notice left the 2002 notices valid and whether respondent was a tenant at sufferance were interesting if not quite novel questions. They were not frivolous to the key players: petitioners for making them, respondent for opposing them, and Judge Lansden for spending nine pages deciding them. Respondent’s March 2006 warning letter and later motion for sanctions were, from respondent, acts of bravado perhaps and certainly frustration that led to Judge Lansden’s denying the motion and this court’s not granting any fees to make the motion. But the letter and the motion do not take away from respondent’s attorneys’ legitimate effort to oppose petitioner’s attempts at eviction.
Respondent achieved favorable results because of his attorneys’ efforts. With the exception of the sanctions motion, respondent prevailed in both holdover proceedings. Most impor *379 taut, respondent finally achieved his ultimate goal when petitioners offered him a new renewal lease.
An award of reasonable attorney fees includes the time spent on appellate work. This court has previously awarded attorney fees for successful appellate work performed in connection with landlord-tenant litigation. (See e.g. Ross, 12 Misc 3d at 572; Goldman, 10 Misc 3d 1065[A], 2005 NY Slip Op 52152[U], *2, affd as to fee award for appellate work 15 Misc 3d 135[A], 2007 NY Slip Op 50743[U], *1.)
A court’s attorney fees award should also include work related to the fee hearing. Under Real Property Law § 234, a prevailing party may recover fees on fees. (Solow Mgt. Corp. v Tanger, 19 AD3d 225, 227 [1st Dept 2005, mem], citing David Z. Inc. v Timur on Fifth Ave., 7 AD3d 257, 258 [1st Dept 2004, mem].) As the prevailing party in the 2005 and 2006 holdover proceedings, respondent should be compensated for time spent proving the value of his attorneys’ services.
Reductions
Respondent’s attorney fee award is reduced by excluding his attorneys’ March 2006 letter warning petitioners not to bring the 2006 holdover proceeding. To prepare that letter, respondent used legal research he repeated later in preparing his affirmation in support of the motion to dismiss dated May 8, 2006 for the 2006 holdover proceeding. (Respondent’s exhibit A.) Respondent used similar language and cited the same four cases in both sets of papers. Respondent cannot bill twice for work done once. The court will deduct 1.7 hours and $620.50 for the March 2 letter.
In addition, respondent’s attorney fee award is reduced by excluding the time spent on respondent’s surreply in the 2006 holdover proceeding. Attorney fees may not be recovered for unnecessary work. (Nestor v Britt, NYLJ, July 2, 1998, at 32, col 2, affd 270 AD2d at 193.) Judge Lansden noted that Judge Finkelstein’s order permitted only petitioners to submit surreply papers. Respondent should not have assumed that he could submit surreply papers, and petitioners should not have to pay for this extra work. But respondent’s preparation of the surreply was helpful at oral argument. The court will not exclude completely all the work done to prepare the surreply. The billing records indicate 2.7 hours for Lamb’s preparing the surreply on July 3, 2006, and 2.6 hours for Kastner to review it on July 4, 2006. The court reduces this to one hour of Lamb’s rate of $365. This amounts to reduction of $1,972 for the surreply.
*380 Respondent’s attorney fees are further reduced by excluding time devoted to unrelated actions. According to billing records for May 11 and 19, 2006, each show an entry of one hour by “KN” for an “unrelated action.” Each of these entries is for $40, for a reduction of $80 for unrelated work.
Respondent’s attorney fees are also reduced for time devoted to unsuccessful claims. (See Hensley v Eckerhart, 461 US 424, 434-435 [1983] [finding that in determining proper attorney fee awards, unsuccessful claims are not related to ultimate result achieved and should be treated like unrelated claims raised in separate lawsuit].) Work related to respondent’s unsuccessful motion for sanctions in the 2006 holdover proceeding should be excluded. Respondent’s attorneys’ billing records do not indicate the actual time spent drafting the sanctions motion. The entries show only that Lamb and Kastner spent 18.1 hours to prepare the 22-page motion to dismiss and for sanctions dated May 8, 2006. Four of the 22 pages, or 18% relate solely to the sanctions issue. The court will deduct 18% from the total time Lamb and Kastner billed to prepare the moving papers. This amounts to a reduction of $1,256.13. The billing entries also show an additional 34.3 hours devoted to drafting respondent’s reply affirmation in support of his motion to dismiss and the motion for sanctions. Three of the 21 pages, or 16.6% relate solely to the sanctions issue. The court will deduct an additional $2,409.50. Petitioners are entitled to a reduction of $3,665.63 for work done for the unsuccessful sanctions motion.
Respondent’s attorney fees total $96,734.94. After subtracting $620.50 for the March 2 letter, $1,972 for the surreply, $80 for unrelated work, and $3,665.63 for the sanctions motion, respondent’s attorney fees total $90,396.81.
Interest
Respondent is entitled to interest for unpaid attorney fees under CPLR 5001 (a). (See e.g. Nestor v Britt, 270 AD2d at 193; Matter of Boxley, 218 AD2d 623, 624 [1st Dept 1995, mem], citing Ash & Miller v Freedman, 114 AD 2d 823, 823 [1st Dept 1985, mem].) To the sum of $90,396.81, the court adds nine percent legal interest. An award of attorney fees is “ ‘a conditional award or prerogative which does not mature until the underlying action or proceeding has been determined.’ ” (Solow Mgt., 19 AD3d at 226-227, quoting 119 Fifth Ave. Corp. v Berkhout, 135 Misc 2d 773, 774 [Hous Part, Civ Ct, NY County 1987], and citing Nestor v Britt, 270 AD2d at 193.) The entitlement. to interest accrues from August 8, 2006 when respondent *381 prevailed in the fourth holdover proceeding. The potential for attorney fee interest began on that date.
CPLR 5001 (b) provides that “interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.” The intermediate date in the 259-day period between August 8, 2006 and today, April 23, 2007, is December 17, 2006, the 128th day. To calculate the interest, the sum of $90,396.81 is multiplied by 0.09, for a total of $8,135.71. The sum of $8,135.71 is then multiplied by 128 and divided by 365, the number of days in a year, for an interest total of $2,853.07. Accordingly, to $90,396.81 in attorney fees is added $2,853.07 in interest for a total final money judgment in respondent’s favor of $93,249.88.