Museum Bldg. Holdings, LLC v Schreiber (2025 NY Slip Op 50712(U))

[*1]

Museum Bldg. Holdings, LLC v Schreiber

2025 NY Slip Op 50712(U)

Decided on May 5, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 5, 2025
Supreme Court, Kings County

Museum Building Holdings, LLC, Plaintiff,

against
Joel Schreiber, Defendant.

Index No. 515041/2022

Duane Morris LLP, New York City (David T. McTaggart of counsel), for Plaintiff.
Goldberg Weprin Finkel Goldstein LLP, New York City (Kevin J. Nash of counsel), for Defendant.

Aaron D. Maslow, J.

The following numbered papers were used on this motion: NYSCEF Document Nos. 38, 41-58, 60-63, 65-87, 89-94, 96-141, 143-149, 151-156, 159-178.
Background
On May 24, 2022, a judgment in the amount of $5,450,818.00 in favor of Plaintiff Museum Building Holdings, LLC ("Plaintiff") was docketed against Defendant Joel Schreiber ("Defendant"). Following more than two years of efforts by Plaintiff to obtain post-judgment information from Defendant, which included making four motions to compel, this Court, by order dated April 10, 2025, granted Plaintiff's fourth motion to compel, which included "recoup[ing] from Defendant the amount of the reasonable fees and expenses incurred by Plaintiff in its efforts to secure compliance with the Information Subpoena and a Subpoena Duces Tecum, the Order of this Court dated August 7, 2023 and entered by the Clerk of Court on August 8, 2023 (NYSCEF Doc. No. 89), and the Order to Show Cause dated October 21, 2024 (NYSCEF Doc. No. 114)" (NYSCEF Doc No. 162, Order, Apr. 10, 2025 at 1-2). A hearing on the issue of legal fees and expenses was held on April 30, 2025. Plaintiff sought $103,492.50, reflecting 143.2 hours of work plus $1,777.50 in filing and transcript fees.

Law
Reasonable legal fees and disbursements are recoverable where a judgment debtor has impaired, impeded, or prejudiced the rights of a judgment creditor to obtain information from the judgment debtor in order to recover the judgment debt (see Judiciary Law § 773; Matter of Barclays Bank, PLC v Hughes, 306 AD2d 406 [2d Dept 2003]; Quantum Heating Servs. Inc. v Austern, 121 AD2d 437 [2d Dept 1986]; Bennett Bros., Inc. v Floyd Bennett Farmers Mkt. Corp., 16 AD2d 897 [1st Dept 1962]; Hearst Mags. v Leslie Greene, LLC, 2014 NY Slip Op 32787[U] [Sup Ct, NY County 2014]). Indeed, for two years Defendant frustrated Plaintiff's attempts to obtain information as to any assets of his which could be levied upon. By the time he made a substantial response to Plaintiff's discovery inquiries in a comprehensible fashion, imprisonment would only have served as punishment for the delay — not as an inducement to finally respond. Plaintiff is entitled to be paid its attorney fees and disbursements expended in prying out from Defendant the information which would answer the information subpoena and subpoena duces tecum served on him. The ultimate receipt of information regarding numerous accounts and entities with which Defendant was affiliated has perhaps yielded fruit which will enable Plaintiff to proceed further in its efforts to have its judgment satisfied. 
In using an affirmation or affidavit to calculate attorney's fees, "the court must possess sufficient information upon which to make an informed assessment of the reasonable value of the legal services rendered" (Bankers Fed. Sav. Bank v Off W. Broadway Devs., 224 AD2d 376, 378 [1996]; cf. People's United Bank v Patio Gardens III, LLC, 143 AD3d 689, 691 [2d Dept 2016] ["Here, the affidavit of services rendered submitted by the plaintiff fails to set forth counsel's experience, ability, and reputation, and fails to detail the prevailing hourly rate for similar legal work in the community"]). As discussed below, Plaintiff submitted sufficient information in the form of David T. McTaggart's affirmation and the annexed exhibits.
"In determining what is reasonable compensation for an attorney, the court may consider a number of factors, including, inter alia, the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented, the lawyer's experience, ability, and reputation, the customary fee charged for similar services, and the results obtained (see RMP Capital Corp. v Victory Jet, LLC, 139 AD3d at 839; Diaz v Audi of Am., Inc., 57 AD3d 828, 830 [2008]). The determination of reasonable attorney's fees is generally left to the discretion of the trial court, which is often in the best position to determine those factors integral to the fixing of a reasonable fee (see RMP Capital Corp. v Victory Jet, LLC, 139 AD3d at 840; Miller Realty Assoc. v Amendola, 51 AD3d at 990)." (Diggs v Oscar De La Renta, LLC, 169 AD3d 1003, 1004-1005 [2d Dept 2019]; accord Matter of Freeman, 34 NY2d 1 [1974]; Lancer Indem. Co. v JKH Realty Group, LLC, 127 AD3d 1035, 1035-1036 [2d Dept 2015]).
In terms of the customary fee charged for similar services, there should be evidence as to the amount charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom the prevailing party was represented (see Kaygreen Realty Co., LLC v IG Second Generation Partners, L.P., 78 AD3d 1008 [2d Dept 2010], quoting Getty Petroleum Corp. v G.M. Triple S. Corp., 187 AD2d 483, 483-484 [2d Dept 1992]). 
Absent evidence of the hours expended as a result of a party's frivolous conduct, a flat award of an attorney's fees is not supported in the record (see Retained Realty, Inc. v 1828 51, LLC, 153 AD3d 1438, 1440 [2d Dept 2017]).
Where bills are submitted, the Court may consider only those entries which relate to the [*2]work concerning which attorney's fees are to be awarded; work related to other matters must be excluded (see Martinez v Estate of Carney, 129 AD3d 607, 610). As was stated in People's United Bank v Patio Gardens III, LLC, 143 AD3d 689, 691 [internal quotation marks omitted], "Moreover, the plaintiff failed to show which fees relate to work on which of the two parcels that was foreclosed upon and which, if any, fees relate to work on both of the parcels. Absent such a showing, the plaintiff cannot establish that the attorney's fees are reasonable and warranted for the services actually rendered for each of the parcels foreclosed upon [citation omitted]." Also, if there is block billing, including vague and nonspecific billing entries, the Court may exercise its discretion and adjust the billed amounts with an across-the-board reduction in the hours expended (see RMP Capital Corp., 139 AD3d at 840 [25% reduction]).
Finally, it is noted that an award of an attorney's fees properly includes fees incurred in substantiating the fee claim itself, i.e., so-called "fees on fees" as well as documented costs (see Lancer Indem. Co., 127 AD3d 1035 at 1036).

Application
David T. McTaggart, an attorney for 22 years and special counsel at Duane Morris, LLP, the law firm representing Plaintiff, has been the lead attorney there in the effort to compel Defendant's cooperation in disclosing information about his finances. Mr. McTaggart submitted a detailed affirmation attesting to the services he performed which led to Defendant producing the compendious information in response to the subpoenas. That so much work was necessary is attributable to Defendant's prolonged delay in providing it. It was only upon this Court's threat of imprisonment that Defendant took seriously his obligations to answer the information subpoena questions and produce the documents called for in the subpoena duces tecum. Therefore, the amount of time spent by Mr. McTaggart was well justified in dealing with a difficult, uncooperative judgment debtor. The billing records submitted are detailed and document the time spent. Mr. McTaggart's skills are evidenced in his tenacious prosecution in seeking from Defendant that which he was obligated to provide. In the end, Plaintiff has received a lot of material which it can use in an attempt to pursue Defendant's assets.
The work performed by Mr. McTaggart would not have been necessary or incurred but for Defendant's failure to comply with the subpoenas and the third order to compel. There can be no reasonable dispute that, prior to the filing of the fourth motion to compel, Defendant had failed to provide meaningful responses to the subpoenas despite having been directed by the Court to provide responsive information on three prior occasions. Among other things:
• Defendant did not provide account statements for numerous bank accounts reflecting millions of dollars in transactions until after Plaintiff filed the fourth motion to compel, including for accounts specifically identified in the third order to compel.
• Although both the second and third orders to compel specifically directed Defendant to provide complete, sworn and written information subpoena responses, he never provided any such updates to his February 21, 2023 responses until 2025.
• In 2025, Defendant produced, for the first time, documents regarding bank accounts, companies and other assets that previously were not disclosed. Disclosed for the very first time in Defendant's 2025 production was information regarding companies that he had called irrelevant as recently as October 30, 2024 in a sworn opposition to the fourth motion to compel, even though he admitted in court on March 26, 2025 that one of the [*3]companies was a source of his income.
• In fact, Defendant did not take his obligations under the July 2022 subpoenas seriously until the Court, at the November 14, 2024 hearing, remarked that "we may have to have Mr. Schreiber spend some time in prison" if he failed to finally comply with the subpoenas and the third order to compel.
• At the November 14, 2024 hearing, the Court adjourned the hearing until January 2025, found that Defendant still had failed to produce all which had been sought of him, directed Defendant to further supplement his discovery, and directed the parties to submit proposed counter-orders regarding that non-compliance. The majority of the motion expenses and hearing expenses that Plaintiff seeks to recoup were incurred after that interim order, including through the submission of a detailed affirmation and proposed order detailing Defendant's non-compliance through November 2024.
• In response to those submissions, Defendant failed to provide a proposed order in compliance with the Court's November 14, 2024 hearing to permit a side by side comparison of the parties' proposed orders in an orderly fashion. This failure necessitated still a third hearing, as ordered by the Court on January 13, 2025.
• Following Plaintiff's persistence, Defendant produced updated responses to the subpoenas after the February 14, 2025 deadline set by the Court's January 13, 2025 interim order (as adjourned by stipulation). In the following weeks, Defendant continued to provide still more documents, up through the eve of the March 26, 2025 hearing, and even then his production was not complete.
In short, the ongoing and extensive efforts expended by Plaintiff since the filing of the fourth motion to compel were reasonable and necessary to compel Defendant's compliance with the subpoenas and the third order to compel.
The Court is not familiar with Mr. McTaggart's reputation but his firm is a highly regarded one and he has submitted a copious amount of information regarding his experience not only in debtor-creditor law, but also in commercial, insurance, intellectual property, media, and entertainment litigation. He also has written extensively on legal topics. Duane Morris LLP is an AM Law 100 firm since 2001 and has multiple offices in this country and overseas.
Mr. McTaggart's firm charges $1,240.00 per hour for his work. In this instance, an arrangement between Plaintiff and the firm led to his hourly rate being reduced to $650.00 in 2023, $700.00 in 2024, and $725.00 in 2025.
No survey of fees charged by comparable firms was included by Mr. McTaggart. Neither was one submitted by Defendant. However, this Court takes notice that in RMP Capital Corp. v Victory Jet, LLC (139 AD3d 836), cited above, the Appellate Division, Second Department, sustained payment for name partners' services at $415.00 and $410.00 per hour. This appellate decision was issued in 2016. The billed services here span a timeframe of August 2023 to March 2025. Taking into account that the $415.00 and $410.00 per hour were for a suburban law firm and that Duane Morris, LLP has an office in Manhattan — and moreover, that there has been inflation since mid-2021 due in part to the Covid pandemic economic disruption and the war resulting from Russia's invasion of Ukraine (see 2021—2023 inflation surge, Wikipedia, available at 
https://en.wikipedia.org/wiki/2021%E2%80%932023_ inflation_surge#:~:text=A%20worldwide%20increase%20in%20inflation,highest%20inflation%20rates%20in%20decades [last accessed Apr. 30, 2025]) — this Court finds that $650.00 in 2023, [*4]$700.00 in 2024, and $725.00 in 2025 are reasonable. In fact, this Court could award higher than the discounted hourly rate (see Matter of Rose BB., 35 AD3d 1044 [1st Dept 2006]; Matter of Verplanck, 151 AD2d 767 [2d Dept 1989]; Ross v Congregation B'Nai Abraham Mordechai, 12 Misc 3d 559 [Civ Ct, NY County 2006]).
In an assessment of an attorney's fees awarded to prevailing parties in Social Security benefits litigation, an hourly rate of $1,750.00 was recently found reasonable; the court noted that hourly rates of $1,594.59 and $1,918.00 had also been deemed reasonable (see Stewart v Commissioner of Social Sec., 2025 WL 1207658 [EDNY 2025]). A Proskauer Rose LLP senior associate rate of $800.00 per hour was sustained in Stonex Group, Inc. v Shipman (2025 WL 1212165 [SDNY 2025]) in connection with a successful motion for sanctions.
In connection with bankruptcy cases, where subpoenas requiring a deposition and production of documents were concerned, the federal district court stated:
Angelo Gordon requests hourly rates of between $1,175 to $1,350 for the Jones Day partners. ECF No. 11-1. These rates, though on the higher end, are comparable to rates awarded in this jurisdiction for firms in the "the New York City 'big firm' market." See, e.g., Vista Outdoor Inc. v. Reeves Family Tr., No. 16 Civ. 5766, 2018 WL 3104631, at *6 (S.D.NY May 24, 2018) (awarding fees of $1,170 to $1,260 for partners at Gibson, Dunn & Crutcher, LLP); In re Relativity Fashion, LLC, No. 15 Br. 11989, 565 B.R. 50, 70 (Bankr. S.D.NY 2017), and In re Relativity Fashion, LLC, No. 15 Br. 11989 (Bankr. S.D.NY June 10, 2016), ECF No 1965 (awarding hourly rates of up to $1,225 for Jones Day partners). Moreover, "the best evidence of the reasonableness of the 'market' value of a particular law firm's services (and therefore the reasonableness of its fees) are the fees that the law firm normally charges its clients in other matters." In re Relativity Fashion, 565 B.R. at 70. These rates are "the same or similar to those paid by Jones Day's other clients." Ghaul Decl. ¶ 11. Accordingly, the Court finds the rates for the partners reasonable.
For the associates, Angelo Gordon requests hourly rates of $875 for Genna Ghaul, who graduated from Columbia Law School in 2013, and $625 for Furqaan Siddiqui, who graduated from the University of California, Los Angeles School of Law in 2017. See Billing Records; Genna Ghaul, Jones Day, 
https://www.jonesday.com/en/lawyers/g/genna-ghaul (last visited Apr. 12, 2021); Furqaan Siddiqui, Weil, Gotshal & Manges LLP, https://www.weil.com/people/furqaan-siddiqui (last visited Apr. 12, 2021). Courts in this district have found hourly rates of $753 on the "upper limit" of rates award for associates in this district, even those at firms comparable to Jones Day. Visa Outdoor Inc., 2018 WL 3104631, at *7 (awarding hourly rate of up to $626 for a fifth-year associate). In general, courts decline to award hourly rates of over $650 for associates. See In re Relativity Fashion, 565 B.R. at 70, and In re Relativity Fashion, No. 15 Br. 11989, ECF No. 1965 (awarding hourly rates of up to $650 for Jones Day associates); Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd., 392 F. Supp. 3d 382, 407—08 (S.D.NY 2019), appeal withdrawn, No. 19-2836, 2019 WL 6652238 (2d Cir. Sept. 23, 2019) (concluding an hourly rate of $650, rather than the requested range of $555 to $980, was reasonable where plaintiff "fail[ed] to submit any evidence relating to these attorneys' legal experience and skill that would allow this [c]ourt to ascertain the prevailing market rates for similar services"). Accordingly, the Court will apply an hourly rate of $650 for Ghaul and $625 for Siddiqui. (Angelo, [*5]Gordon & Co., L.P. v MTE Holdings, LLC, 2021 WL 1353756, *3 [SDNY 2021].)
In Whelan Advisory Capital Mkts., LLC v HomeSource Operations, LLC (2025 WL 1126827 [SDNY 2025], it was noted that $500.00 per hour was found reasonable for post-judgment collection efforts; the court awarded $450.00 per hour.
This additional case law in the federal district courts also lends support to Duane Morris LLP billing for Mr. McTaggart's services at $650.00 in 2023, $700.00 in 2024, and $725.00 in 2025.
Mr. McTaggart's affirmation is supported by copies of invoices and data from billing records maintained by his firm. The firm kept meticulous records of time spent on the within case. Moreover, this application for attorney's fees does not factor into account the work performed by other attorneys and staff. For example, Paul Chronis, appearing on a pro hac vice basis, attended the several hearings, yet Plaintiff has not sought reimbursement for his time spent in court. Neither does the application for attorney's fees take into account the time spent deposing Defendant on November 12, 2024; this is so even though Defendant's failure to provide material information before that deposition deprived Plaintiff of the opportunity to ask probative questions.
At the hearing, the Court inquired of Mr. McTaggart regarding Mr. Chronis's court appearances. Mr. Chronis was present in court for eight and a half hours. This is confirmed as the Court observed him present. This does not even include the time Mr. Chronis spent flying back and forth from Chicago to attend the hearings. Mr. Chronis's time is billed at over $1,000.00 per hour by Duane Morris LLP. Mr. McTaggart spent 13.7 hours preparing the instant application for attorney's fees according to NYSCEF Doc No. 174, a supplemental submission, and the Court finds that reasonable.
The amount sought by Plaintiff for attorney's fees and disbursements is broken down by categories:
• Conferral Costs — fees expended identifying Defendant's discovery deficiencies and communicating with his attorneys concerning such deficiencies, in the amount of $11,477.50. This included communications on September 11, 2023; September 13, 2023; October 11, 2023; January 18, 2024; February 8, 2024; February 16, 2024; May 3, 2024; May 28, 2024; September 3, 2024; September 10, 2024; September 12, 2024; October 4, 2024; and October 22, 2024. However, Plaintiff did not include all of them in the amount sought. There were also emails on February 25, 2025; February 26, 2025; March 4, 2025; March 6, 2025; March 7, 2025; and March 10, 2025.
• Motion Costs — fees and costs expended drafting, filing, and serving papers in support of the fourth motion to compel in the amount of $45,973.85. Submissions to the Court included the proposed order to show cause of August 19, 2024; the August 19, 2024 affirmation in support of motion with exhibits; the memorandum of law; the affirmations of service and compliance; the notice of entry of interim orders; the November 29, 2024 supplemental affirmation with exhibits, as directed by the Court's November 14, 2024 interim order; the proposed orders, as directed by the Court's November 14, 2024 interim order and at the March 26, 2025 hearing; and the March 10, 2025 second supplemental affirmation with exhibits, as directed by the Court's January 13, 2025 interim order.
• Hearing Costs — fees and costs expended preparing for and attending the three hearings [*6]regarding the fourth motion to compel, in the amount of $46,041.15. This included preparing for and attending the three hearings this Court held regarding the fourth motion to compel on November 14, 2024; January 13, 2025; and March 26, 2025, including reviewing Defendant's motion papers, drafting argument outlines, conferring with colleagues, and traveling to and from Court for the hearings.
At the hearing, while conceding that Plaintiff's counsel had performed a thorough job, Defendant contended that there was "overthoroughness" and "overkill," especially with respect to preparation of an order which the Court had directed both sides to prepare. The purpose was so that the two proposed orders could be viewed side by side with respect to sought materials which were in contention. Defendant's counsel described his client's financial situation as "complicated," which is an understatement. It was the complexity of Defendant being associated with numerous corporate entities, some with interlocking relationships, which made the job of Plaintiff's counsel more difficult. The work undertaken by Plaintiff's counsel was Herculean — having to deal with 30,000 pages of documents to see if what was requested had been provided.
The Court disagrees with Defendant's assertion that the amount of time billed by Mr. McTaggart was excessive. In fact, Mr. McTaggart did not bill for certain time spent on this effort to compel Defendant to provide the requested information because it was lumped into time spent on other matters also. The Court also disagrees with Defendant's argument that the time indicated for individual entries exceeded what was warranted. The Court finds the billing to be conservative with respect to the time spent on the various tasks. Defendant's remaining arguments in support of denial and/or reduction of the attorney's fees are rejected. The Court finds it unseemly that Defendant is quibbling over the attorney's fees considering that it took him more than two years to properly respond to the information subpoena and the subpoena duces tecum, and even still there remains a question of where he is parking his personal money in order to avoid Plaintiff's levying upon it. The disclosure produced would not have occurred but for the work performed by Mr. McTaggart and his firm, all of which has been amply documented.
All of Plaintiff's claimed expenses (disbursements) were documented with copies of invoices and/or receipts.
Based on the foregoing, the Court considers the requested total of $103,492.50 to be reasonable. However, the Court is of the opinion that Plaintiff should be compensated for having to pay Mr. Chronis, and therefore awards an extra $8,500.00 ($1,000.00 multiplied by 8.5 hours) therefor. Also, Plaintiff is entitled to be compensated for the time spent on compiling and drafting the application for the attorney's fees and, therefore, it awards $9,932.50 ($725.00 multiplied by 13.7 hours) for such. This is in accord with case law cited above to the effect that a court may award higher than the discounted hourly rate. Similarly, a court should take into account work which is paid for by the prevailing party-client but not reflected in the application for attorney's fees. Also, it is in accord with case law concerning "fees on fees." The Court otherwise accedes to Plaintiff's reluctance to seek compensation for other work performed in connection with securing compliance with the Court's post-judgment discovery orders.
Altogether, the Court finds that Plaintiff should be awarded $121,925.00 in legal fees and disbursements. This takes into account the time and labor required, the difficulty of the undertaking, the skill required to handle the problem presented, the lawyer's experience, ability, and reputation, fees awarded for similar services, and the results obtained (see Diggs, 169 AD3d 1003).
At the hearing, the parties were in dispute over whether the attorney's fees should be payable in one lump sum or in installments and with a reference to contempt if not paid. The Court finds that payment in installments is appropriate, as set forth below, and that the issue of contempt is premature.

 Conclusion
NOW, upon the Order of this Court dated April 10, 2025, stating, among other things, that "Plaintiff is entitled to recoup from" Defendant Joel Schreiber "the reasonable fees and expenses incurred by Plaintiff in" connection with the Motion, and upon the oral argument held and placed on the record on April 30, 2025, and upon review of the papers heretofore enumerated, it is:
ORDERED that Plaintiff is entitled to recover from Defendant the amount of $121,925.00 ("Award") as the reasonable fees and expenses incurred in connection with securing Defendant's responses to the Information Subpoena and Subpoena Duces Tecum served on him as post-judgment discovery; and
IT IS FURTHER ORDERED that Defendant shall pay Plaintiff the Award in installments as follows: $30,481.25 due no later than June 2, 2025; $30,481.25 due no later than July 1, 2025; $30,481.25 due no later than August 1, 2025; and $30,481.25 due no later than September 2, 2025; and
It is further ORDERED that the clerk of the Court shall enter a judgment in favor of the Plaintiff and against the Defendant for the full amount of $121,925.00 and shall have execution thereon.
This constitutes the decision and Order of the Court.